UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

HANNAH BROTHERS,

                                   Docket No.: 09-cv-0654 (RJH)

                Plaintiff,

      -against-

OSK MARKETING & COMMUNICATIONS, INC.,
OSK PROJEKTMANAGEMANT, OLIVER
SCHROTT KOMMUNICATION GMBH, SIEMENS
AKTIENGESELLSCHAFT, and SIEMENS ENERGY
& AUTOMATION, INC.,

                Defendants.
----------------------------------------X


# DEFENDANT SIEMENS AKTIENGESELLSCHAFT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE RULE B ATTACHMENT


**HILL RIVKINS & HAYDEN LLP**
Attorneys for Defendants
Siemens Aktiengesellschaft and
Siemens Energy & Automation, Inc.
45 Broadway – Suite 1500
New York, New York 10006
Tel. 212-669-0600
Fax: 212-669-0698/0699

Of Counsel:
Michael D. Wilson
Andrew R. Brown

MICHAEL D. WILSON
ANDREW R. BROWN
HILL RIVKINS & HAYDEN LLP
Attorneys for Defendants
Siemens Aktiengesellschaft and
Siemens Energy & Automation, Inc.

45 Broadway – Suite 1500
New York, New York  10006
(212) 669-0600


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

HANNAH BROTHERS,

                        Plaintiff,

       -against-

OSK MARKETING & COMMUNICATIONS, INC.,
OSK PROJEKTMANAGEMANT, OLIVER
SCHROTT KOMMUNICATION GMBH, SIEMENS
AKTIENGESELLSCHAFT, and SIEMENS ENERGY
& AUTOMATION, INC.,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Docket No.: 09-cv-0654 (RJH)


**DEFENDANT SIEMENS AKTIENGESELLSCHAFT'S
MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO VACATE RULE B ATTACHMENT</u>**

    Defendants Siemens Aktiengesellschaft ("Siemens AG") respectfully submits this Memorandum of Law in Support of its Motion to Vacate the Process of Maritime Attachment and Garnishment ("PMAG") obtained by Plaintiff Hannah Brothers ("Hannah") pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure

1

("Rule B"). As set forth herein, plaintiff has not, and cannot, state a maritime claim against Siemens AG and, therefore, Siemens AG respectfully submits that the PMAG against it must be vacated and any funds attached pursuant thereto must be immediately released. Further, plaintiff has alleged that the defendants were joint venture partners, one of which is a New York corporation. As service of process upon one joint venturer secures jurisdiction over all the joint venturers, the allegations of the Verified Complaint preclude attachment since, if the allegations were true, the defendants are "found" within this district.

## INTRODUCTION

This case involves a charter party dispute, in which plaintiff alleges breach of a barge charter party entered into between plaintiff, as owner, and OSK Marketing & Communications, Inc., as charterer. Plaintiff has demanded arbitration of the dispute with OSK Marketing pursuant to the arbitration clause in the charter party. To Siemens' knowledge, the parties have each nominated an arbitrator, but hearings have not yet been commenced. Plaintiff now, apparently unsatisfied with its claim against the charterer alone, has commenced this action alleging that Siemens AG and others were joint venturers with the charterer, OSK Marketing and thus jointly and severally liable for its obligations. No basis for Siemens AG's liability other than joint venture liability is alleged in the Verified Complaint.

Upon plaintiff's representation to the Court that the defendants were joint venturers and that Siemens AG is not "found" within the district, Process of Maritime

2

Attachment and Garnishment was issued by the Court and funds of Siemens AG in the amount of $4,097,377.81 were attached on February 24, 2009.

## FACTS

Siemens AG is a German corporation specializing in electrical engineering and electronics products and services. In 2005 Siemens AG contracted with OSK Projektmanagemant ("OSK PM") to operate a traveling trade exhibition to be named the "Exiderdome." (March 19, 2009 Declaration of Christian Stens, ¶ 2). The agreement between Siemens AG and OSK PM was a "cost plus" agreement, pursuant to which Siemens AG reimbursed OSK PM for its actual costs, plus a handling fee of 5%-8% depending on the nature and magnitude of the service rendered. (Stens Decl., ¶ 3).

The Exiderdome consisted of 55 special shipping containers—approximately 10,000 square feet of exhibition space—for which Siemens AG entered into a leasing agreement with Oliver Schrott Kommunikation, GmbH ("OSK GmbH") (See "Nutzungsvertrag," Leasing Agreement with English translation, attached as Exh. B to Stens Decl.). Another OSK entity, OSK Marketing & Communications ("OSK Marketing"), entered a chartering agreement with Plaintiff Hannah Brothers, chartering a barge to transport the Exiderdome exhibit during a portion of its Canada/U.S. tour. Siemens AG was not a party to the charter party with Hannah Brothers, nor did Siemens AG have any agreement with OSK Marketing. The only agreements Siemens AG entered with any OSK entities were the "cost plus" agreement with OSK PM, and the written leasing agreement with OSK GmbH. (Stens Decl., ¶ 5).

The purpose of the Exiderdome project was the promotion of Siemens AG's products and its name. Siemens AG did not enter into any agreement with any OSK

entity under which profits or losses related to the Exiderdome were shared. *Id.* The Exiderdome exhibition was not a joint venture between Siemens AG and any other company.

In its Verified Complaint, the plaintiff summarily alleges at paragraph 8 that OSK GmbH, OSK PM, Siemens AG, and another Siemens entity, Siemens Energy & Automation, Inc. ("Siemens E&A"), were "joint venture partners". In paragraph 32, plaintiff states that "OSK Marketing, OSK PM, OSK [GmbH] and Siemens [AG] engaged in a joint undertaking of a particular transaction for mutual profit – a business undertaking, i.e., the Exiderdome Tour." And, at paragraph 33, plaintiff boasts that "[e]ven prior to being given opportunity to conduct discovery, [plaintiff] can demonstrate that each of the named defendants was an integral participant in the Exiderdome Venture." Even if these allegations were true, they are insufficient to make out a *prima facie* claim of joint venture liability of Siemens AG.

As argued below, plaintiff has failed to adequately allege any facts in support of its conclusion that Siemens AG entered into a joint venture with any OSK entity—especially OSK Marketing, the charterer of the barge, and as a result there is no tenable maritime claim against Siemens AG. Further, if a joint venture did exist, all the joint ventures would be subject to New York jurisdiction because one of the alleged venturers, OSK Marketing, is a corporation with a principal place of business in New York and the joint venturers are therefore "found" within the district. Alternatively, if the Court finds that plaintiff has sufficiently pleaded the existence of a joint venture giving rise to a tenable maritime claim against Siemens AG, Siemens has herein proven that its agreements with OSK PM and OSK GmbH were simply contracts, not joint ventures and

4

plaintiff has offered no evidence to the contrary. Accordingly, as the plaintiff is without the requisite maritime claim against Siemens AG, the ex parte maritime attachment of Siemens AG's property must be immediately vacated.

## ARGUMENT

In response to a Motion to Vacate, plaintiff bears the burden of demonstrating that it has met the filing and service requirements of Rules B and E and that: "1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir.2006). While the plaintiff is not required to prove its case at this early stage, it must make a *prima facie* showing that it has met these requirements. If the plaintiff fails to do so, the Court must vacate the attachment. *Proshipline Inc. v. Aspen Infrastructures Ltd.*, 533 F. Supp. 2d 422, 426 (S.D.N.Y. 2008).

At a Rule E(4)(f) hearing, defendant "can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Fed.R.Civ.P. Supp. R. E(4), Advisory Com, Note to 1985 Amendment. "[T]he district court may certainly vacate the judgment if it determines, after hearing from both parties, that the requirements of Rule B have not actually been met." *Williamson v. Recovery Limited Partnership*, 542 F.3d 43, 52 (2d Cir. 2008).

## POINT I

### PLAINTIFF HAS NOT SUFFICIENTLY PLED THE EXISTENCE OF A JOINT VENTURE BETWEEN SIEMENS AND ANY OSK ENTITY THAT WOULD SUPPORT PLAINTIFF'S EX PARTE MARITIME ATTACHMENT OF SIEMENS' PROPERTY

While there is some debate in the Courts of the Southern District of New York concerning the proper depth of inquiry into the allegations of the plaintiff's Complaint at a Supplemental Admiralty Rule E(4)(f) hearing (see Point III, *infra*), it is without dispute that the Court at such hearing is to determine whether plaintiff has alleged a *prima facie* admiralty claim against the defendant. Here, plaintiff has failed to properly allege the existence of a joint venture between Siemens AG and any other entity and has asserted no other allegation against Siemens AG which could give rise to an admiralty claim against Siemens AG.

Plaintiff alleges that, while Defendant OSK Marketing was the signatory to the charter party at issue in this dispute (Verified Complaint, ¶ 34), the remaining defendants were joint venturers with OSK Marketing and, thus, were all jointly and severally liable for claims arising under the charter party. *See* Verified Complaint, ¶¶ 30, 32.

The only facts alleged in the Verified Complaint purporting to demonstrate a joint venture are a) that certain of the defendants were represented during the course of the bareboat charter by the same counsel (Verified Complaint, ¶ 31), and b) that Siemens AG was the lessor of the containers which comprised the exhibition structure and the owner of the contents of the containers. Verified Complaint, ¶ 39. The remaining allegations concerning the joint venture are merely conclusory, e.g., "OSK Marketing, OSK PM, OSK [GmbH] and Siemens [AG] engaged in a joint undertaking of a particular

transaction for mutual profit – a business undertaking, i.e., the Exiderdome Tour" *Id.* at ¶ 32. These allegations are insufficient to make out a *prima facie* claim of joint venture liability.

In New York, in order to form a joint venture, all of the following elements must be met:

> (1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge, or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses.

*Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 909 F.2d 698, 701 (2d Cir. 1990); *Independent Energy Corp. v. Trigen Energy Corp.*, 944 F. Supp. 1184, 1201 (S.D.N.Y. 1996). "An indispensable element of a joint venture is an understanding 'to share in the profits of the business and submit to the burden of making good the losses.'" *Mertz v. Seibel Realty, Inc.*, 265 A.D.2d 925 (4th Dept. 1999) (quoting *Bruno v. Dynamic Enters.*, 132 A.D.2d 964, 965 (4th Dept. 1987)). The absence of any one of the five elements is fatal to the establishment of a joint venture. *US Airways Group, Inc. v. British Airways PLC*, 989 F. Supp. 482, 492-93 (S.D.N.Y. 1997).

**(a) No Allegation of Intent to Form Joint Venture.**

The Verified Complaint fails to allege the manifestation of intent of the defendants to become joint venturers in an enterprise for profit, which is the second requirement for a finding of a joint venture. The manifestation of intent to form a joint venture, and not merely a contractual relationship, must be clear. *Precision Testing Laboratories, Ltd. v. Kenyon Corp. of America*, 644 F. Supp. 1327, 1349 (S.D.N.Y. 1986). In refuting plaintiff's attempt to allege that a joint venture was created, the

Declaration of Christian Stens attests that Siemens AG had no intention of entering into a joint venture or partnership relationship with any OSK entity. Stens Decl., ¶¶ 5, 6. Instead, Siemens' agreements with OSK PM and OSK GmbH were merely simple contracts for services and the lease of containers. *Id.* at ¶¶ 4-5. Failure to plead anything that demonstrates an intent to enter into something other than a simple contractual relationship is fatal to a joint venture claim. *Zeising v. Kelly*, 152 F. Supp. 2d 335, 348-49 (S.D.N.Y. 2001); *Kidz Cloz, Inc. v. Officially for Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004).

**(b)  No Allegation of Sharing of Profits and Losses**

The Verified Complaint also fully ignores the requirement that there be a provision in the agreement for the sharing of profits and losses among joint venturers, which is "[a]n indispensable essential of a contract of partnership or joint venture . . ." *Steinbeck v. Gerosa*, 4 N.Y.2d 302, 317 (N.Y. 1958). The plaintiff's failure to allege this essential element of a joint venture is also fatal to plaintiff's claim. *Zeising v. Kelly*, at 348-49; *Kidz Cloz, Inc. v. Officially for Kids, Inc.*, at 71.

The Declaration of Christian Stens identifies the bases upon which Siemens AG paid OSK PM for its services and paid OSK GmbH for the lease of the containers that comprised the exhibit, both of which clearly demonstrate the absence of any intent to share profits or losses among the contracting parties. Stens Decl., ¶¶ 3-5. Siemens AG's agreements with both OSK PM and OSK GmbH were nothing more than arm's-length contracts. *Id.*

Mere generalized allegations in a Complaint alleging joint venture liability are insufficient to state a joint venture claim for Rule E(4) (f) purposes. *See Tide Line, Inc. v.*

8

*Eastrade Commodities, Inc.*, 2006 WL 4459297, 2007 A.M.C. 252, 268-69 (S.D.N.Y. 2006) (insufficient pleading of an alter-ego claim). In *Brave Bulk Transport Ltd. v. Spot On Shipping Ltd.*, 2007 WL 3255823 at *5 (Oct. 30, 2007), the Court noted the danger in permitting a plaintiff the extreme measure of ex parte attachment when the plaintiff's Complaint is substantively lacking:

> The wholly conclusory allegations in the Amended Complaint are, upon reflection, simply insufficient. Were a plaintiff to be permitted to rely on such allegations to obtain an attachment against an entity that is not a party to a contract sued on, the already thinly stretched remedy of maritime attachment could disrupt the commercial activities of entities whose links to the real defendant in interest are tenuous or non-existent. By including specific factual allegations that support "on information and belief contentions in the complaint, the plaintiff's counsel subjects himself to Rule 11 sanctions should they prove erroneous. That is, it seems, a salutary result.

*Id.* at *6. In *Williamson v. Recovery Limited Partnership*, 542 F.3d 43, 52 (2d Cir. 2008), the Second Circuit made clear: "Where plaintiff has failed to make a *prima facie* case, the Court may vacate the attachment for failure to meet the requirements of Rule B." See also, *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (finding an insufficient pleading of a corporate veil-piercing claim). As the plaintiff has not sufficiently pled the existence of a joint venture between Siemens AG and any other entity that could result in Siemens AG's liability under a maritime cause of action and since plaintiff has not alleged any other basis for Siemens AG liability, the Process of Maritime Attachment and Garnishment against Siemens AG must be vacated, and all Siemens' funds attached thereunder must be immediately released.

9

## POINT II

### IF THERE IS A JOINT VENTURE, IT IS FOUND IN NEW YORK AND NO BASIS EXISTS FOR RULE B ATTACHMENT; IF NOT, NO CLAIM HAS BEEN STATED AGAINST THE NON SIGNATORIES TO THE CHARTER PARTY

The Verified Complaint alleges that all defendants were parties to a joint venture and thus jointly and severally liable herein. Verified Complaint ¶30. Defendant OSK Marketing & Communications, Inc. is alleged to be a New York corporation with a place of business in New York City. Verified Complaint ¶3.

Under New York law, where the Complaint sets forth that corporate defendants are being sued as joint venturers, the Complaint may be served upon any one of the defendants and jurisdiction is thereby obtained on all of them. John's Inc. v. Island Garden Center of Nassau, Inc., 49 Misc. 2d 1086, 269 N.Y.S. 2d 231 (1966); Buchanan Marine, Inc. v. McCormack Sand Company, 1988 WL 86687 (E.D.N.Y. 1988).

Thus, since jurisdiction is available over all alleged joint venturers by reason of the presence of one of them in New York, and since all are amenable to service of process by service on the alleged New York-based venturer, all are to be "found" within the district for Rule B purposes and attachment is unavailable.

Since plaintiff's Verified Complaint has destroyed the basis for attachment, the attachment must be vacated. The identical situation was before this Court in the context of allegations of alter ego liability in Glory Wealth Shipping Pte. Ltd. v. Industrial Carriers, Inc., 590 F.Supp. 2d 562 (S.D.N.Y. 2008), where plaintiff obtained a writ of attachment of the property of defendant not found within the district upon an allegation that the defendant was the alter ego of a defendant which was to be found here. The

court held that under New York law, where one defendant is subject to personal jurisdiction, its alter ego is also subject to personal jurisdiction and may be served by serving the local defendant. Even though alter ego status was only alleged, and not proven, and defendant denied the alter ego claim, it remained plaintiff's burden to demonstrate the alter ego status, one way or the other. "…but either way it loses. If [defendant] is an alter ego, it is found in the district; if [defendant] is not an alter ego, there is no valid *prima facie* maritime claim to support an attachment" (citation omitted) Glory Wealth, 564.

Here, defendant OSK Marketing & Communications, Inc. a New York corporation was the signatory to the allegedly breached charter party with plaintiff. Verified Complaint ¶34. Liability of the other defendants is based solely on allegations that they were joint venturers with OSK Marketing & Communications. Plaintiff thus faces the same "Catch-22" faced by plaintiff in Glory Wealth. If there was indeed a joint venture, its members were present and amenable to service of process in New York through the presence of OSK Marketing & Communications, and there was no basis for attachment. If there was no joint venture, no *prima facie* maritime claim has been alleged against the non-signatories to the charter party.

### POINT III

**EVEN IF THE COURT FINDS THAT PLAINTIFF HAS ADEQUATELY PLEADED A JOINT VENTURE VENTURE CLAIM, THE ATTACHMENT SHOULD NONETHELESS BE VACATED FOR ABSENCE OF ANY EVIDENCE OF A JOINT VENTURE**

In determining whether plaintiff has an admiralty claim, most of the Courts in this District have required only that the plaintiff allege a *prima facie* admiralty case in its complaint. *Penguin Maritime Ltd. v. Lee & Muirhead Ltd.*, 588 F. Supp. 2d 522, 526 (S.D.N.Y 2008). However, due in part to the grave consequences an unwarranted ex parte attachment of a party's funds can yield, other District Courts apply a "reasonable grounds" standard in which the Court considers "the totality of Plaintiff's allegations, including those offered in their opposition briefs and at the [Rule E] hearing." *Maersk v. Neewra*, 443 F. Supp. 2d 519, 530 (S.D.N.Y. 2006); *Baja Ferries USA LLC. v. Calder Seacarrier Corp.*, 2008 WL 2856533 at *3 (S.D.N.Y. Oct. 24, 2008) ("Here, where both parties have submitted voluminous exhibits, I conclude it is appropriate to consider their submissions in evaluating whether Baja has a *prima facie* admiralty claim."). And, more importantly, the Second Circuit has recently made clear that a District Court does not abuse its discretion in looking beyond the plaintiff's complaint to see if plaintiff is possessed of a valid maritime claim. *Williamson v. Recovery Limited Partnership*, 542 F.3d 43, 52 (2d Cir. 2008); *See also Totalmar Navigation Corp. v. ATN Industries*, 2008 WL 5111316 at *4 (S.D.N.Y. Dec. 3, 2008) ("[U]nder the logic of *Aqua Stoli*, the Court should not engage in a broad inquiry into evidence presented ..., [however] the Circuit's more recent decision in *Williamson* opines that a district court may properly look beyond the pleadings when considering a motion for vacatur under Rule E(4)(f)."); *SPL Shipping Ltd. v. Gujarat Chiminex Ltd.*, 2008 WL 4900770 at *1 (holding that "*Williamson* does indeed stand for the proposition that a district court does not abuse its discretion when it considers evidence outside of the pleadings on motion to vacate an order of attachment.").

The broader, reasonable grounds inquiry, in which the Court considers the totality of the plaintiff's allegations and other evidence to determine whether reasonable grounds exist to maintain the attachment is, we submit, the more appropriate inquiry where plaintiff in a contract dispute has caused the attachment of the property of a non-contracting party based upon information-and-belief alter-ego, veil-piercing, joint venture or similar allegations. In such cases, fundamental fairness dictates that a more rigorous inquiry be made by the Court upon a Rule E(4)(f) application to satisfy itself that some factual basis exists for the attachment of the defendant's property.

In *Tide Line v. Eastrade Commodities Inc.*, 2007 A.M.C. 252 (S.D.N.Y. 2006), the Court found that mere allegations that defendant Transclear acted as a "paying agent" for defendant Eastrade and arranged for other non-parties to satisfy the debts of Eastrade was insufficient to make out a *prima facie* alter-ego claim to sustain the attachment of Transclear's assets. However, in response to the motion to vacate the attachment, plaintiff submitted additional evidence which the Court found sufficient to show a *prima facie* claim against Transclear for alter ego liability.

In *Brave Bulk Transport Ltd. v. Spot On Shipping Ltd.*, 2007 WL 3255823 (S.D.N.Y. 2007), the Court vacated an attachment as to defendant ZSL on the grounds that the allegations of the complaint were insufficient to establish a *prima facie* case of alter ego liability. On motion to reconsider the vacation, plaintiff submitted additional evidence to support their alter ego allegations. While the Court noted that the support should have been included in the complaint, and not in opposition to a motion to vacate, the Court considered the material and deemed it sufficient to conclude that plaintiff "has a good faith basis for alleging that ZSL is Spot On's alter ego." *Id.* at *6.

Thus, it is fully appropriate for the Court, on a Rule E(4)(f) application, especially where alter ego, joint venture, or veil piercing grounds of liability are alleged, to consider all evidence presented to determine whether a basis exists for alleging liability of the defendant.

The evidence before the Court on this application demonstrates clearly that plaintiff does not have a good faith basis for its joint venture allegations, and that this is instead a clumsy lunge for a deep pocket;

- As set forth above, plaintiff has made no showing that the alleged joint venturers intended to create a joint venture as opposed to simply a contractual relationship or that there was any agreement to share profits and issues. To the contrary, the Declaration of Christian Stens and its exhibits clearly demonstrate the absence of any intent to create a joint venture relationship, or to share profits and losses.

- Until December 10, 2008, plaintiff consistently maintained that its claims arising under the charter party were against OSK Marketing & Communications, Inc., the charterer of the barge, and not against any other entity. The dispute between plaintiff and OSK M&C arose in early November, 2008, which resulted in plaintiff declaring termination of the barge charter. Verified Complaint, ¶12. Thereupon, an action was commenced in the United States District Court for the Southern District of New York by the defendants herein (then all represented by the same counsel) against Hannah Brothers to enjoin Hannah from terminating the charter. Copy of Complaint in OSK Marketing et al. v. Hannah Brothers is attached to the Affidavit of Michael D. Wilson as Exhibit A. In opposition to the application in that action for a Temporary Restraining Order, Holland & Knight,

attorneys for Hannah Brothers wrote a letter dated November 12, 2008 to Judge Sullivan, copy of which is attached to the Wilson Affidavit as Exhibit B. In the Holland & Knight letter, Mr. Power makes the following representations to the Court, "OSK has ordered Hannah Brothers to immediately take the Exiderdome 1 barge to Halifax, Canada." (Ex. B, p. 1); "As bareboat charterer, OSK had operational control of the vessel...". (Ex. B, p. 2); "During OSK's operation of the barge..." (Ex. B, p. 3); "OSK, despite being informed that the vessel was in an unseaworthy condition by reason that it lacked its only anchor, ordered the vessel to leave Pier 90..." (Ex. B, p.3); "...OSK hired a "renegade" tugboats and threatened to be paid the Exiderdome 1 off Pier 90 and take it to Albany" (Ex. B, p. 3); "As a result of OSK's actions ... Hannah Brothers had no choice but to exercise its rights under the Bareboat Charter" (Ex. B, p. 4): "OSK personnel including OSK outside counsel Hans Heppe and in-house counsel Manuela Crowalla, threatened the Captain of the Hannah Brothers' tug IVORY COAST." (Ex. B, p. 5). The recitation of events in the Holland & Knight letter to Judge Sullivan closely parallels the allegations of the Verified Complaint in this case, except the references to acts of OSK in the letter have now morphed in the Verified Complaint into allegations of acts of "the joint venture of partners."

- On November 12, 2008, plaintiff arranged with Ironhead Marine Inc., an Ohio shipyard which claims to be owed money by either the owner or charterers for pre-charter modifications to the vessel, to arrest the vessel in the District of New Jersey. Negotiations followed among the parties to obtain the release of the vessel in order to continue the exhibition tour or, failing which, the offloading of

15

the exhibition from the barge to continue the tour overland. Attached to the Wilson Affidavit as Exhibit C is a copy of Mr. Powers' December 10, 2008 e-mail to the undersigned Siemens AG's counsel, setting forth plaintiff's claim against OSK. Thus, plaintiff's claim, from the outset, was asserted against OSK Marketing alone. Only later, realizing that OSK Marketing was unwilling or unable to resolve plaintiff's claims did plaintiff seize upon the 'joint venture' theory to attempt to belatedly assert its claims against additional parties.

**POINT IV**

**COSTS SHOULD BE ASSESSED
AGAINST PLAINTIFF AND COUNSEL**

Plaintiff's attachment of Siemens AG's property is an egregious abuse of Rule B process, warranting an award of costs against plaintiff and counsel.

With absolutely no factual basis, plaintiff alleges in its Verified Complaint that the defendants acted to form a joint venture. Plaintiff was aware of not only the factual, but the legal weakness of its position. Due, no doubt, to plaintiff's counsel's awareness of the fact that a joint venture under New York law requires an intent to form a joint venture and an agreement to share profits and losses, plaintiff's counsel submitted a brief in support of issuance of the writ of attachment citing only New Jersey law and a Delaware district court case, steering clear of New York law. The Court and defendants are entitled to expect more candor from plaintiff's counsel when ex parte relief is sought.

This case is an extreme example of the current "Rule B gone wild" craze in which maritime attachments are obtained in order to bludgeon settlements from foreign entities often based on the flimsiest of "joint venture" or "alter ego" liability allegations, with

plaintiffs trusting that the Court will refrain from inspecting too closely the merits of the allegations on a post-attachment hearing. This abuse must be curbed.

Based on the foregoing, Siemens AG submits that plaintiff's Rule B action is patently lacking in merit, and that it could have been filed *only* with an improper motive. Accordingly, Siemens respectfully requests an award of its attorneys' fees and interest on the attached fund from the date of attachment to the date of release based upon plaintiff's bad faith. *Dow Chemicals Pac., Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329 (2d Cir. 1986).

## CONCLUSION

The attachment of Siemens AG's property should be vacated for failure to allege a *prima facie* claim and costs should be assessed against plaintiff and counsel.

Dated: New York, New York
March 24, 2009

> HILL RIVKINS & HAYDEN LLP
> Attorneys for Defendant
> Siemens AG
>
> By: _____
> Michael D. Wilson
> Andrew R. Brown
> 45 Broadway – Suite 1500
> New York, New York 10006
> (212) 669-0600

30021\30021-1\005Memo-of-Law

17